*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2019 UT 21**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ROBERT KUCHCINSKI,
*Appellant,*

*v.*

BOX ELDER COUNTY, and
THE OFFICE OF THE BOX ELDER COUNTY SHERIFF,
*Appellees.*

No. 20160674
Filed June 3, 2019

On Direct Appeal

First District, Logan
The Honorable Brian Cannell
No. 150100424

Attorneys:

Phillip W. Dyer, Benjamin R. Dyer, Salt Lake City
James E. Harward, W. Earl Webster, Amy L. Williamson,
Cottonwood Heights, for appellant

Frank D. Mylar, Andrew R. Hopkins, Salt Lake City, for appellees

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
JUSTICE HIMONAS, JUSTICE PEARCE, and JUDGE MORTENSEN joined.

ASSOCIATE CHIEF JUSTICE LEE filed an opinion concurring in part and
concurring in the judgement.

Due to her retirement, JUSTICE DURHAM did not participate herein;
and COURT OF APPEALS JUDGE DAVID N. MORTENSEN sat.

JUSTICE PETERSEN became a member of the Court on
November 17, 2017, after oral argument in this matter, and
accordingly did not participate.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1    Robert Kuchcinski was held in the Box Elder County Jail for seventeen days on a justice court's probable cause determination that he was driving under the influence. Neither a breathalyzer test nor a blood test showed that he was actually driving impaired. During these seventeen days in jail, he was never brought before a judge for his initial appearance and was never formally charged with any crimes. And, although a judge set bail, Mr. Kuchcinski claims that the bail amount was never communicated to him. Finally, on day sixteen, Mr. Kuchcinski was able to contact an attorney, who notified the County prosecutor of Mr. Kuchcinski's prolonged detention. The prosecutor immediately asked the court to issue an order mandating Mr. Kuchcinski's release. The court ordered his release the next day.

¶2    He eventually brought several claims against the County and the County Sheriff's Office, including claims of violations of his rights to due process and bail. The district court dismissed his claims on summary judgment, concluding that he had not suffered a flagrant violation of his constitutional rights and that he could not identify a specific municipal employee who had violated his rights. Mr. Kuchcinski appealed. We are asked to determine whether the district court erred in dismissing his claims under the bail and due process clauses of the Utah Constitution. We hold that the court did not err in dismissing Mr. Kuchcinski's bail clause claims, because he has failed to demonstrate that the bail clause is self-executing. But the court did err in dismissing his due process claims. It incorrectly applied the standard for determining when a municipal employee is liable for damages for a constitutional violation. Accordingly, we set forth the correct standard for reviewing constitutional claims for damages when brought solely against a municipality.[1]

_____

[1] Although the term "municipality" most often refers specifically to cities or towns, *see*, *e.g.*, UTAH CODE § 10-1-104(5) (defining municipality to include cities, towns, and metro townships), we sometimes use "municipality" as an umbrella term for political subdivisions of the state. *See Suarez v. Grand Cty.*, 2012 UT 72, ¶ 67, 296 P.3d 688 (using the term "municipalities" and "government bodies" interchangeably while discussing state actors' obligations under the due process clause). Accordingly, we use "municipality" in this opinion to refer to any political subdivision of the state.

**Background[2]**

¶3    Robert Kuchcinski was driving a tractor-trailer rig when he was pulled over by Utah Highway Patrol (UHP) for failing to stay in one lane. After issuing Mr. Kuchcinski a citation for his traffic violation, the UHP trooper asked Mr. Kuchcinski to take a portable breathalyzer test. He passed the breathalyzer test, but the trooper continued with a series of field sobriety tests. Mr. Kuchcinski, who was suffering from an inner ear infection, failed the balance-related sobriety tests. The UHP trooper arrested Mr. Kuchcinski for driving under the influence.[3]

¶4    Mr. Kuchcinski was booked into the Box Elder County Jail (Jail) on June 16, 2012. The next day, the Box Elder County Justice Court entered its finding of probable cause based on the UHP trooper's statement. The court found that probable cause existed for the arrest without a warrant, that "the detention of [Mr. Kuchcinski] may continue," and that Mr. Kuchcinski could post bail in the amount of $1,350. Mr. Kuchcinski was not present at the probable cause determination and alleges that he was not made aware of the bail amount.

¶5    Mr. Kuchcinski remained in jail for seventeen days. He was not arraigned during that time and never appeared before the justice court. It is unclear from the record if and when he learned that bail had been set, but he discussed bail in a phone call with his fiancée's brother on June 26, 2012, and in subsequent phone calls. He explained to his fiancée and her brother that he could not make bail without a co-signer, which he did not have.

¶6    He also told those he spoke with on the phone that he was waiting to appear before a judge to ask to be released from jail. At no point during his incarceration was he taken before a magistrate. Each

---

[2] Below, the County moved for summary judgment on the constitutional claims. On appeal, we are asked to review the district court's decision on that motion. "[W]hen reviewing an order granting summary judgment, the evidence and all inferences that may be reasonably drawn from the evidence must be liberally construed in favor of the party opposing the motion." *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1000 (Utah 1991). We recite the facts accordingly.

[3] Mr. Kuchcinski later allowed for his blood to be drawn in order to screen for intoxicating substances. The tests came back negative.

Wednesday—the day justice court was held—the Jail apparently transported those detainees who had been scheduled to appear before the justice court. For some reason Mr. Kuchcinski was not taken with other inmates to the justice court on Wednesday, June 20. And because the judge who was scheduled to preside over the justice court was on vacation on the next Wednesday, June 27, Mr. Kuchcinski did not see a judge the second week of his incarceration. Then, on June 28, he was informed by a Jail employee that he would not be able to appear before the justice court the following Wednesday, because that day was July 4th, a national holiday, and court would not be held. So Mr. Kuchcinski continued to sit in jail.

¶7    On July 2, 2012, another inmate contacted his attorney, Art Lauritzen, on behalf of Mr. Kuchcinski. Mr. Lauritzen contacted the Box Elder County prosecutor, who in turn contacted the justice court to request Mr. Kuchcinski's immediate release. Mr. Kuchcinski was released the next day, without posting any bail or bond. An information was not filed charging Mr. Kuchcinski until July 18, 2012, two weeks after his release. The DUI charge was dismissed on August 27, 2012.

¶8    Due to his time in jail and the allegation that he was driving under the influence, Mr. Kuchcinski lost his job as a truck driver, the only employment he has held as an adult. Since his incarceration he has also experienced post-traumatic stress disorder and "debilitating anxiety attacks whenever [he has] to drive more than a few miles."

¶9    Mr. Kuchcinski filed suit against Box Elder County and the Box Elder County Sheriff's Office in federal district court. He brought a 42 U.S.C. § 1983 claim for violations of his civil rights, as well as Utah state law claims. That court dismissed his Section 1983 claim, but declined to exercise supplemental jurisdiction over the state law claims and instructed Mr. Kuchcinski to refile in state court.

¶10 In state district court, Mr. Kuchcinski brought causes of action against the County and the Jail for violations of his right to bail and his right to due process under article I, sections 7 and 8 of the Utah Constitution. He also alleged the County was negligent and had falsely imprisoned him. He later withdrew his negligence claim, and the court dismissed it. The court then entered summary judgment against Mr. Kuchcinski, concluding that the false imprisonment claim was barred by both the Governmental Immunity Act and the justice court's probable cause finding. It further concluded that Mr. Kuchcinski's bail and due process claims

failed because he could not "show any flagrant violation of his Utah constitutional rights" or "identify any Box Elder County individual who flagrantly violated his Utah constitutional rights." Mr. Kuchcinski timely appealed to this court, challenging only the district court's determinations as to the County's alleged constitutional violations. We have jurisdiction pursuant to section 78A-3-102(3)(j) of the Utah Code.

## Standard of Review

¶11 Mr. Kuchcinski appeals the district court's dismissal of his state constitutional claims. He argues that the district court erred in dismissing his claims on summary judgment because he demonstrated the elements necessary to proceed with a claim for money damages under the Utah Constitution. Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."[4] We "review[] a summary judgment for correctness, giving no deference to the [district] court's decision."[5]

## Analysis

¶12 Mr. Kuchcinski argues that his constitutional rights were violated under the bail and due process clauses of the Utah Constitution.[6] He contends that he had a right under the due process clause to be taken before a judge for a determination of probable cause. He also argues that even if he did not have a right to be present at his probable cause determination, he had a right to appear before a judge before he was detained for an extended period of time. He also asserts that he had the right to be "timely admitted to bail" under the bail clause. And he maintains that these violations warrant an award of damages under Utah law.

¶13 "[T]he Utah Constitution does not expressly provide damage remedies for constitutional violations."[7] So a "plaintiff's remedy for [a] state constitutional violation rests in the common law," which "gives Utah courts the authority to 'accord an

---

[4] UTAH R. CIV. P. 56(a).

[5] *Bahr v. Imus*, 2011 UT 19, ¶ 15, 250 P.3d 56.

[6] *See* UTAH CONST. art. I, §§ 7, 8.

[7] *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cty. Sch. Dist.*, 2000 UT 87, ¶ 20, 16 P.3d 533.

appropriate remedy to one injured from the violation of a constitutional provision.'"[8]

¶14 Relying on our common law, we first address Mr. Kuchcinski's argument under the bail clause. We hold that because he failed to conduct the necessary "self-executing" analysis under *Spackman*, he failed to carry his burden of persuasion on this claim. Next, we address his claims under the due process clause. We hold that the district court erred when it dismissed Mr. Kuchcinski's due process claims for failing to identify an individual at the County who committed a flagrant violation. A plaintiff need not identify a specific government employee in order to hold a municipality liable under the Utah Constitution. We also hold that the district court applied the incorrect standard for determining when a municipality acts flagrantly. We therefore reverse and remand for the district court to make determinations in light of the new standard we articulate today.

## I. Mr. Kuchcinski's Bail Clause Claims

¶15 Mr. Kuchcinski first argues on appeal that the district court erred in dismissing his claims under the bail clause of the Utah Constitution. Specifically, he claims that Box Elder County denied him his fundamental right to bail, including the right to be "timely admitted to bail," the right to be present before a magistrate when bail is set, and the right to be informed of the amount of bail. And he asserts that, under the common law, an award of damages is appropriate for this alleged constitutional violation. We decline to determine whether the County violated Mr. Kuchcinski's right to bail, because Mr. Kuchcinski failed, in his briefs to us, to provide any analysis as to whether the bail clause is self-executing—a threshold inquiry that must be made before a private right may be established under the constitution.[9] We accordingly affirm the district court on this claim.

---

[8] *Jensen ex rel Jensen v. Cunningham*, 2011 UT 17, ¶ 57, 250 P.3d 465 (citation omitted).

[9] *See Heslop v. Bear River Mut. Ins. Co.*, 2017 UT 5, ¶ 45, 390 P.3d 314 (declining to review an issue that is inadequately briefed "when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court" (citation omitted) (internal quotation marks omitted)).

¶16 In *Spackman ex rel Spackman v. Board of Education of Box Elder County School District*,[10] we set forth a two-prong test a plaintiff must meet when seeking a private right to sue for damages under a constitutional provision. First, we held that a "plaintiff must prove that the constitutional provision violated is 'self[-]executing.'"[11] Second, we held that "a plaintiff must establish . . . three elements: (1) the plaintiff suffered a flagrant violation of his or her constitutional rights; (2) existing remedies do not redress his or her injuries; and (3) equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries."[12] Our concern with Mr. Kuchcinski's bail clause claim arises from the first prong.

¶17 We have repeatedly stated that a "constitutional provision is self-executing if it articulates a rule sufficient to give effect to the underlying rights and duties intended by the framers" of the constitution.[13] "In other words, courts may give effect to a provision without implementing legislation if the framers intended the provision to have immediate effect and if 'no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed.'"[14] We have also stated that "constitutional provisions are not self-executing if they merely indicate a general principle or line of policy without supplying the means for putting them into effect."[15]

¶18 As our caselaw suggests, the inquiry into whether a provision is self-executing "turns in large part on an originalist inquiry."[16] Accordingly, we ask "whether the 'framers intended the provision to have immediate effect' without implementing legislation or whether instead its terms would be understood as a 'general principle or line of policy' requiring a legislative act to 'put[]

---

[10] 2000 UT 87, 16 P.3d 533.

[11] *Jensen ex rel Jensen v. Cunningham*, 2011 UT 17, ¶ 58, 250 P.3d 465 (quoting *Spackman*, 2000 UT 87, ¶ 18).

[12] *Id.* (citations omitted) (internal quotation marks omitted).

[13] *Spackman*, 2000 UT 87, ¶ 7 (citation omitted).

[14] *Id.* (citation omitted).

[15] *Id.* (citation omitted).

[16] *Zimmerman v. Univ. of Utah*, 2018 UT 1, ¶ 18, 417 P.3d 78.

[it] into effect.'"[17] Answering this question requires "careful analysis of the precise terms of the Utah Constitution and its original meaning."[18]

¶19 But Mr. Kuchcinski has not provided us with this type of analysis. Rather, he asserts that he "has met the first hurdle in . . . *Spackman*" simply because, under article I, section 26 of the Utah Constitution, the bail clause is to be read as "mandatory and prohibitory," and therefore must be self-executing.[19] This assertion is not enough.[20] In addition to demonstrating that a constitutional provision is prohibitory, a plaintiff must demonstrate that the framers intended the clause to be both "judicially . . . defined and enforced" without implementing legislation.[21] This requires "careful analysis of the precise terms" in the provision and the framer's original meaning of those terms.[22] Because Mr. Kuchcinski completely failed to conduct such analysis, we are reluctant to tread into this important constitutional issue.[23] We accordingly decline to

---

[17] *Id.* (alterations in original) (citation omitted).

[18] *Id.* ¶ 19.

[19] *See* UTAH CONST. art. I, § 26.

[20] While we have said that "[c]onstitutional provisions that prohibit certain conduct *usually* are self executing," *Jensen*, 2011 UT 17, ¶ 59 (emphasis added), the mere fact that a provision is prohibitory is not enough to demonstrate it is self-executing. A plaintiff must show that the constitutional provision was intended to be judicially enforceable without the implementation of legislation. *See Zimmerman*, 2018 UT 1, ¶ 17; *Jensen*, 2011 UT 17, ¶ 59; *Spackman*, 2000 UT 87, ¶ 7; *Bott v. DeLand*, 922 P.2d 732, 737 (Utah 1996), *abrogated on other grounds by Spackman*, 2000 UT 87.

[21] *Spackman*, 2000 UT 87, ¶ 12.

[22] *Zimmerman*, 2018 UT 1, ¶ 19.

[23] *See id.* (declining to resolve whether the free speech clause of the Utah Constitution is self-executing because parties gave "superficial" briefing on the subject and did not engage in any form of originalist analysis); *Waite v. Utah Labor Comm'n*, 2017 UT 86, ¶ 5 n.4, 416 P.3d 635 (declining to determine whether a section of the Workers' Compensation Act was facially unconstitutional because "Petitioners provided almost no analysis of how our Uniform Operation of Laws precedent applied" to the section).

review his claims under the bail clause and affirm the district court's dismissal of such claims.

## II. Mr. Kuchcinski's Due Process Claims

¶20 Mr. Kuchcinski also asserts the district court erred when it dismissed his due process claims under article I, section 7 of the Utah Constitution. Specifically, he argues that the district court erred in holding that he was required to "identify a[] Box Elder County individual who flagrantly violated his Utah constitutional rights." He also contends that the court erred in its determination that he failed to "show any flagrant violation of his Utah constitutional rights by Box Elder County."[24] We address each contention below.[25]

---

[24] Because we have expressly held that the due process clause of the Utah Constitution is self-executing, Mr. Kuchcinski has met this threshold question on his due process claims. *See Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cty. Sch. Dist.*, 2000 UT 87, ¶ 18, 16 P.3d 533 ("[W]e hold that the Due Process Clause . . . [is] self-executing."). Accordingly, we turn to the next prong—the three elements that must be shown for a plaintiff to "proceed with a private suit for damages." *Id.* ¶ 22. We focus entirely on the first element—a flagrant violation—because the district court dismissed Mr. Kuchcinski's constitutional claims solely on this ground.

[25] Mr. Kuchcinski also argued that the district court "improperly relied upon its knowledge of facts outside the record in determining that [his] constitutional rights had not been flagrantly violated." Particularly, he points to places in the record where the court explained its experience with how the justice court system works and how judges serving on the justice court "provide coverage for each other interpersonally." And Mr. Kuchcinski argues that the court relied upon its personal knowledge to determine flagrancy. But we decline to address this argument because the district court's remarks do not affect whether the *County* violated Mr. Kuchcinski's constitutional rights. Rather, these comments went to whether the *justice court* committed a constitutional violation by not replacing a judge when one is on vacation. Because Mr. Kuchcinski did not bring suit against the justice court, these comments are irrelevant to the determination of whether a named defendant flagrantly violated his rights.

*A. The district court erred in dismissing Mr. Kuchcinski's due process claims for failing to identify a Box Elder County employee*

¶21 Mr. Kuchcinski first argues that the district court erred when it held that he must name a specific County employee who flagrantly violated his constitutional rights in order to find relief under the common law. Mr. Kuchcinski is right on this point. We hold that a plaintiff does not have to identify a specific municipal employee in order to demonstrate that a flagrant violation of his or her constitutional rights occurred. Rather, it suffices to plead and prove against the municipality that municipal actors committed a flagrant violation against the plaintiff and that the violation resulted from a policy or custom of the municipality.

¶22 In *Spackman*, we held that a plaintiff seeking money damages "must establish that he or she suffered a 'flagrant' violation of his or her constitutional rights."[26] We explained that a flagrant violation "[i]n essence . . . means that a defendant must have violated 'clearly established' constitutional rights 'of which a reasonable person would have known.'"[27] We further explained that a "clearly established" right is one in which the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."[28] We also stated that the requirement that the constitutional violation be "flagrant" ensures that "a government employee is allowed the ordinary 'human frailties of forgetfulness, distractibility, or misjudgment without rendering [him or her]self liable for a constitutional violation.'"[29]

¶23 Relying on this language, the district court read an additional requirement into the flagrant violation element we articulated in *Spackman*—that the plaintiff must name a municipal employee who acted flagrantly. The court justified its reading by stating that the language in *Spackman* referring to human frailties "would be rendered meaningless if a constitutional offender was not

---

[26] 2000 UT 87, ¶ 23.

[27] *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[28] *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987)).

[29] *Id.* (alteration in original) (quoting *Bott v. DeLand*, 922 P.2d 732, 739–40 (Utah 1996), *abrogated on other grounds by Spackman*, 2000 UT 87).

specifically named." Accordingly, the court dismissed Mr. Kuchcinski's claims because he could not "identify any Box Elder County individual who flagrantly violated his Utah constitutional rights." This was error.

¶24 The district court incorrectly interpreted our *Spackman* opinion as precluding damage awards against municipal entities for constitutional violations when a plaintiff fails to name or identify a specific municipal employee. In *Spackman*, we were presented with a certified question of whether the Utah Constitution permits a direct cause of action for certain constitutional violations. While the Spackmans had originally brought suit against both specific municipal employees and a municipal entity in federal district court, their argument before us primarily focused on their direct cause of action against the municipal employees themselves,[30] a focus that is typical in most municipal liability cases. We accordingly set forth the flagrant violation standard for cases involving a direct cause of action against an individual municipal employee. And in articulating this standard, we relied upon cases from the United States Supreme Court and our court that involved actions against municipal employees.[31]

¶25 While we addressed the potential liability of individual municipal employees in *Spackman*, we certainly did not preclude a direct cause of action against a municipal entity. In fact, we expressly

---

[30] For example, the Spackmans relied heavily upon two U.S. Supreme Court cases—*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and *Davis v. Passman*, 442 U.S. 228 (1979)—for their argument that a direct cause of action is permitted by the Utah Constitution. Both *Bivens* and *Davis* dealt exclusively with direct causes of actions against specific municipal employees. So the Spackmans' argument focused primarily on their claims against individual employees.

[31] *See Anderson*, 483 U.S. at 636–37 (a family brought an action against an FBI agent for conducting a warrantless search of their home); *Harlow*, 457 U.S. at 802–04 (plaintiff brought action against a presidential aide and the Deputy Assistant to the President for conspiring to unlawfully discharge him); *Bott,* 922 P.2d at 734 (an inmate brought suit against the Executive Director of the Utah Department of Corrections, the Utah State Prison Medical Administrator, and a nurse practitioner for failing to provide him sufficient medical care while in prison).

stated that a court could award damages against a government agency alone. Specifically, we urged courts to exercise caution when they make decisions "to award damages against a governmental agency *and/or* its employees for a constitutional violation."[32] This statement suggests that damages may be awarded against a government agency independent of whether a plaintiff has named a municipal employee as a defendant. So, contrary to the district court's holding, *Spackman* does not preclude a plaintiff from bringing suit for damages solely against a municipality.

¶26  The County contends, however, that a holding omitting the requirement that a plaintiff name a municipal employee in determining whether a flagrant violation occurred will subject government entities to "strict liability." It urges this court to adopt the federal standard of municipal liability under 42 U.S.C. § 1983—a standard it believes predicates municipal liability on the naming of a municipal employee. But the County misunderstands the culpability standard of municipal liability under federal law.[33]

¶27  In *Monell v. Department of Social Services of City of New York*,[34] the Supreme Court held that, in addition to municipal employees, municipalities could be found liable under 42 U.S.C. § 1983. But the court expressly rejected the notion that Section 1983 would operate to impose vicarious liability, holding that "a municipality cannot be held liable *solely* because it employs a tortfeasor."[35] Instead, the court limited Section 1983 liability to circumstances "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

---

[32] *Spackman*, 2000 UT 87, ¶ 24 (emphasis added).

[33] It is worth noting at the outset that this court is under no obligation to follow Section 1983 jurisprudence since that statute has no application to state constitutional violations and no analogous statute exists in Utah. With that said, we frequently borrow principles from Section 1983 jurisprudence, as we did in *Spackman*, when determining the contours of liability when constitutional rights have been violated. We do so again today.

[34] 436 U.S. 658, 694 (1978).

[35] *Id.* at 691.

policy, inflicts the injury."[36] And so municipal liability under the federal law was born.

¶28 After *Monell*, the Supreme Court continued to refine its municipal liability doctrine. No longer was it enough "to identify conduct properly attributed to the municipality."[37] Rather, a plaintiff was also required to "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[38] But that is not all. A "plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must [also] demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."[39] Thus, under Section 1983 caselaw, a plaintiff now must show the existence of a policy or custom, deliberate indifference,[40] and causation.

¶29 While Section 1983 jurisprudence has established stringent requirements for proving municipal liability, the naming of a specific municipal employee is simply not one of them. In fact, several

---

[36] *Id.* at 694.

[37] *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).

[38] *Id.* (emphasis added).

[39] *Id.* at 407 (citation omitted).

[40] A showing of deliberate indifference is only required when there is a facially lawful municipal policy that causes an employee to violate a plaintiff's constitutional right. *Id.* at 406–07 ("[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." (citation omitted)). This typically occurs when a plaintiff alleges that a municipality's policy of inaction is the cause of his or her constitutional harm. *See City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989) (holding that the plaintiff must prove that a municipality's failure to train police officers "evidences a 'deliberate indifference'").

federal circuit courts have expressly rejected this notion. Weighing the viability of a Section 1983 claim, the Second Circuit held that "the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality."[41] Similarly, the First Circuit has stated that there is "nothing to prevent a plaintiff from forgoing the naming of an individual officer as a defendant and proceeding directly to trial against the municipality."[42] While there are practical reasons to include the specific municipal employee in a lawsuit against a municipality, which explain why "plaintiffs almost never choose to proceed against the municipality directly,"[43] there is no

---

[41] *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013).

[42] *Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) ("Under § 1983, only the conduct of those officials whose decisions constrain the discretion of subordinates constitutes the acts of the municipality. This does not mean, however, that the responsible decisionmaker must be specifically identified by the plaintiff's evidence. Practices so permanent and well settled as to have the force of law [are] ascribable to municipal decisionmakers." (alteration in original) (citations omitted) (internal quotation marks omitted)); *James v. City of Huntsville*, No. 5:14-CV-02267-SGC, 2015 WL 9268159, at *3 (N.D. Ala. Dec. 21, 2015) ("A plaintiff need not sue the individual tortfeasors she alleges violated her constitutional rights but may proceed solely against the municipality that employed them."); *Onyenwe v. City of Corona*, No. CV12-01363MMM(SPx), 2013 WL 12169375, at *18 (C.D. Cal. Dec. 1, 2013) ("The fact that [plaintiff] is unable to identify the officer who used force against him, moreover, does not foreclose him from attempting to hold the City liable for excessive force, as [plaintiff] need not identify the specific officer who committed the allegedly unconstitutional act to prevail on his *Monell* claim."), *aff'd*, 637 F. App'x 370 (9th Cir. 2016); *White v. City of Trenton*, 848 F. Supp. 2d 497, 502 (D.N.J. Mar. 22, 2012) ("[C]ontrary to the City Defendants' assertion, this does not mean that a plaintiff must always name the individual officers who allegedly inflicted the constitutional harm.").

[43] *Wilson*, 294 F.3d at 8. As the First Circuit notes, these reasons include the fact that "[t]he predicate burden of proving a constitutional harm on the part of a municipal employee . . . is much easier to flesh out when the tortfeasor is a party amenable to the full powers of discovery," that the "burden of placing that harm in the

(Continued)

reason a municipality cannot be held directly liable for damages for its flagrant violations of constitutional rights. So, the County's belief that the federal municipal liability standard requires the naming of a specific municipal employee is simply wrong.

¶30 The County also misunderstands the effect of removing a named municipal employee requirement from a municipal liability determination. Rather than imposing strict liability on the municipality, as the County suggests, the federal municipal liability standard makes it more challenging for a plaintiff to establish municipality liability than when a specific municipal employee is named. If a plaintiff cannot show the existence of a municipal policy or custom, that that policy evidences the municipality's deliberate indifference to an individual's constitutional rights, and that the policy or custom caused the harm, the plaintiff cannot prevail. And because a plaintiff has to show deliberate indifference, culpability remains a factor in showing municipal liability. Accordingly, the district court erred when it held that Mr. Kuchcinski must identify a specific County employee who committed a flagrant violation of his constitutional rights.

## B. The flagrant violation standard

¶31 Having concluded that Mr. Kuchcinski did not need to identify a specific Box Elder County employee to succeed on his due process claims, we next turn to the standard he must prove to establish municipal liability for a violation of the Utah Constitution. We hold that the test we articulated in *Spackman* applies equally to municipal liability suits. A plaintiff seeking damages for a constitutional violation must show (1) that he or she suffered a flagrant violation of his or her constitutional rights; (2) that existing remedies do not redress his or her injuries; and (3) that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries.[44] But, as we acknowledged above, our flagrant violation prong of this test under *Spackman* focused only on those instances where a plaintiff has named a specific municipal employee in its suit. We accordingly

context of a causative municipal custom and policy is significantly more onerous than the task of simply proving that an actionable wrong occurred," and that "an abstract entity like a municipality may present a much less compelling face to a jury than a flesh and blood defendant." *Id.*

[44] *Spackman*, 2000 UT 87, ¶¶ 22–25.

now set forth the elements a plaintiff must show when seeking to establish a flagrant violation solely against a municipality.

¶32  Borrowing from Section 1983 jurisprudence,[45] we hold that a plaintiff seeking to prove that a municipality committed a flagrant violation must show an "action pursuant to official municipal policy of some nature caused a constitutional tort."[46] And, in order for an action pursuant to an official municipal policy to constitute a flagrant violation, the plaintiff must show (1) the existence of a municipal policy or custom, (2) that this policy or custom "evidences a 'deliberate indifference'" to the plaintiff's constitutional rights, and (3) that this policy or custom was "closely related to the ultimate injury."[47] We address each element separately.

¶33 First, a plaintiff seeking to prove that a municipality has committed a flagrant violation must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."[48] Only "deprivations visited pursuant to municipal 'custom' or 'policy' . . . lead to municipal liability."[49] In other words, "municipalities cannot be held liable . . . pursuant to the traditional tort of respondeat superior."[50] A

---

[45] While we are not bound by Section 1983 caselaw, *see supra* note 32, we have relied upon Section 1983 jurisprudence in determining when a municipal officer may be immune from constitutional suit. *See, e.g., Jensen*, 2011 UT 17, ¶ 52 (describing how this court has "incorporated and expanded upon" the "defense of absolute immunity from section 1983 civil rights actions" in determining when a municipal officer is immune from suit under *Spackman*); *Parker v. Dodgion*, 971 P.2d 496, 497–98 (Utah 1998) (relying on Section 1983 jurisprudence to determine whether a court-appointed psychologist qualifies for judicial immunity). We again choose to borrow from this jurisprudence in developing the contours of our *Spackman* test.

[46] *Monell*, 436 U.S. at 691.

[47] *Canton*, 489 U.S. at 388–91.

[48] *Peak Alarm Co., Inc. v. Salt Lake City Corp.*, 2010 UT 22, ¶ 79, 243 P.3d 1221 (citation omitted).

[49] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985).

[50] *Peak Alarm Co.*, 2010 UT 22, ¶ 79; *see also Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992) ("[A city] is only liable when it can be fairly said that the city itself is the wrongdoer.").

"decision to adopt [a] particular course of action . . . by th[e] government's authorized decisionmakers . . . surely represents an act of official government 'policy.'"[51] But this is not the only instance where we will find an official policy or custom. "There is also no question that [a] decision not to take any action to alleviate [a constitutional violation] constitutes a policy for purposes of . . . municipal liability."[52] A municipality's policy of inaction, therefore, may satisfy this element.[53]

¶34 Second, a plaintiff seeking to prove municipal liability for inaction must show more than just the existence of a municipal policy or custom; he or she must also show that this policy or custom "evidences a 'deliberate indifference'" to his or her constitutional rights.[54] The deliberate indifference requirement is "satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."[55] In cases involving municipal inaction, deliberate indifference may be shown where the municipality has failed to act despite a pattern of repeated constitutional offenses,[56] or where there is evidence that the plaintiff complained to the municipality about a constitutional violation and the municipality did nothing.[57] It can also be established "when the need for more or different action 'is so obvious, and the inadequacy [of the current policy or procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.'"[58] In other words, when the lack of a policy

---

[51] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

[52] *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992).

[53] A policy of inaction could include an unwritten rule or policy, the lack of a policy, or the lack of an established practice of taking action in such cases.

[54] *Canton*, 489 U.S. at 389.

[55] *Peak Alarm Co.*, 2010 UT 22, ¶ 80 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

[56] *Id.*

[57] *Hayes v. Faulkner Cty.*, 388 F.3d 669, 674 (8th Cir. 2004).

[58] *Oviatt*, 954 F.2d at 1477–78 (second alteration in original) (quoting *Canton*, 489 U.S. at 390).

or procedure so obviously results in a constitutional violation, regardless of whether there is a known pattern or complaint of constitutional violations, deliberate indifference may be established.[59]

¶35 Finally, a plaintiff seeking to prove that a municipality committed a flagrant violation must show "that a particular violation was 'caused' by the municipal 'policy.'"[60] A plaintiff may do this by showing that "the identified deficiency . . . [is] closely related to the ultimate injury."[61] For example, a plaintiff meets the causation element if he or she "prove[s] that the injury would have been avoided had [the defendant] instituted some affirmative procedure designed to" avoid the constitutional violation.[62]

¶36 With the correct standard in mind, we now turn to the district court's decision. The district court held that Mr. Kuchcinski failed to show that the County committed a flagrant violation of his constitutional rights. But the court was operating under the test for flagrancy we articulated in *Spackman* for municipal employees. This was error. In this case, because Mr. Kuchcinski brought suit only against municipal entities, the court should have analyzed (1) whether he identified a municipal policy, (2) whether that policy evidenced a deliberate indifference, and (3) whether such policy caused Mr. Kuchcinski's injury.[63] We therefore remand this case to the district court to apply the correct test for determining whether a municipal entity is liable for a constitutional violation.

---

[59] *See Pembaur*, 475 U.S. at 480; *see also Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648–49 (6th Cir. 2012) ("Courts have identified two ways to demonstrate a municipality's need to act. The plaintiff can present evidence showing that the municipality possessed actual knowledge indicating a deficiency with the existing policy or training (or lack thereof), such as where there have been recurring constitutional violations. Otherwise, the plaintiff must show that the need to act should have been 'plainly obvious to the [municipality's] policymakers, who, nevertheless, are "deliberately indifferent" to the need.'" (alteration in original) (citations omitted)).

[60] *Tuttle*, 471 U.S. at 823.

[61] *Canton*, 489 U.S. at 391; *see also Oviatt*, 954 F.2d at 1478.

[62] *Oviatt*, 954 F.2d at 1478 (quoting *Canton*, 489 U.S. at 391).

[63] *Supra* ¶ 32.

*C. The district court's task on remand*

¶37 On remand, the district court should assess whether the County is liable in a manner consistent with the legal principles set out in this opinion and in our opinion in *Spackman*. Under our common law test, a court may award a plaintiff damages only where he or she establishes (1) that a constitutional violation of his or her rights occurred, (2) that the constitutional provision the defendant violated was "self-executing," and (3) that the *Spackman* test for tort liability is satisfied.[64]

¶38 Because Utah law makes clear that the due process clause is self-executing, and the County does not argue otherwise, the district court need not address the self-executing prong of our common law analysis for liability on remand.[65] But the court will need to determine whether Mr. Kuchcinski's constitutional rights were violated—the first prong of the analysis—and, if his rights were violated, the court must then apply the *Spackman* test, in accordance with the principles we have articulated today, to determine whether the County should be held liable for that violation.

1. The district court must determine whether a constitutional violation occurred

¶39 The first prong of our common law test for assessing municipal liability requires the court to determine whether the plaintiff's constitutional rights were violated. This is so because our *Spackman* test is only implicated when a court is assessing "the availability of damages for *constitutional violations*."[66] Importantly, this threshold determination does not answer who was responsible for the violation, especially in cases involving multiple state actors that acted in concert to effect a deprivation of a protected right. Instead, it focuses on what occurred to the plaintiff through state action.

---

[64] *Spackman*, 2000 UT 87, ¶¶ 19–25; *see also supra* ¶ 31 (listing the three elements of the *Spackman* test: (1) that the violation was flagrant, (2) that existing remedies do not redress the plaintiff's injuries, and (3) that equitable relief is wholly inadequate to protect the plaintiff's rights).

[65] *Spackman*, 2000 UT 87, ¶ 18 ("[W]e hold that the Due Process Clause . . . [is] self-executing.").

[66] *Id.* ¶ 19 (emphasis added).

¶40 Here, the district court did not reach this threshold question, because it decided that Mr. Kuchcinski's due process claim against the County failed as a matter of law on a separate element (that the *Spackman* test was not satisfied because there was not a flagrant violation). Accordingly, the district court's first task on remand will be to determine whether Mr. Kuchcinski's allegations amount to a constitutional violation.[67]

¶41 Mr. Kuchcinski claims that his due process rights were violated when he was "simply left" in jail for seventeen days. So the district court must determine whether Mr. Kuchcinski's seventeen-day detention violated his constitutional right to due process. The due process clause of the Utah Constitution protects individuals from state-induced deprivations "of 'life, liberty or property, without due process of law.'"[68] Thus, where an individual

---

[67] Justice Lee criticizes our decision to instruct the district court as to the test it should apply on remand. He argues that to do so is improper because we do not have adversarial briefing on the issue and, in his view, it "establishes governing standards under the due process clause of the Utah Constitution." *See infra* ¶ 52 (Lee, A.C.J., concurring). Yet where we are remanding for a determination of whether a due process violation occurred, it is clearly "our prerogative and responsibility" to articulate the standard for assessing due process violations. *State v. Houston*, 2015 UT 40, ¶ 135, 353 P.3d 55 (Lee, A.C.J., concurring). And in explaining that an individual suffers a violation of his due process rights when he is detained without sufficient process, we are merely articulating a well–established and basic principle of due process law that requires no adversarial briefing.

[68] *Salt Lake Legal Def. Ass'n v. Atherton*, 2011 UT 58, ¶ 10, 267 P.3d 227; *see also Adoption of K.A.S.*, 2016 UT 55, ¶ 85, 390 P.3d 278 (Lee, A.C.J., dissenting) ("[T]he guarantee of 'due process' served as 'a restraint on the legislative as well as on the executive and judicial powers of the government. (citation omitted)'"); *see generally Due Process Clause*, Black's Law Dictionary (10th ed. 2014) ("The constitutional provision that prohibits the government from unfairly or arbitrarily depriving a person of life, liberty, or property."); *Due-Process Rights*, Black's Law Dictionary (10th ed. 2014) ("The rights (as to life, liberty, and property) so fundamentally important as to require compliance with due-process standards of fairness and justice.").

has been deprived of liberty without receiving due process, his or her due process rights have been violated.[69]

¶42 When determining whether an individual's due process rights have been violated, we typically evaluate the issue in two steps. First, we ask "'whether the [complaining party] has been deprived of a protected interest' in property or liberty."[70] Second, if

---

[69] *See Dairy Prod. Servs., Inc. v. City of Wellsville*, 2000 UT 81, ¶ 48, 13 P.3d 581 (explaining that the due process clause provides that a person's right to liberty "should not be disrupted 'without [the government] following fundamental standards of due process of law.'" (citation omitted)); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person . . . of . . . liberty . . . without due process of law.' Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects. . . . [G]overnment detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections.") (first, second, third, and fourth alterations in original) (emphasis omitted) (citations omitted)); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action. 'It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" (citation omitted)); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) ("Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property . . . be preceded by notice and opportunity for hearing . . . ."); *Jauch v. Choctaw Cty.*, 874 F.3d 425, 430 (5th Cir. 2017) ("The procedural due process analysis starts with one inquiry: whether the state has 'deprived the individual of a protected interest—life, liberty, or property.'" (citation omitted)); *State v. Angilau*, 2011 UT 3, ¶ 13, 245 P.3d 745 ("Utah's constitutional guarantee of due process is substantially the same as the due process guarantees contained in the Fifth and Fourteenth amendments to the United States Constitution." (citing *Bailey v. Bayles*, 2002 UT 58, ¶ 11 n.2, 52 P.3d 1158)).

[70] *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 48, 299 P.3d 990 (alteration in original) (citation omitted); *see*

(Continued)

we find a "deprivation of a protected interest, we consider whether the procedures at issue compl[ied] with due process."[71] If the deprivation at issue was not justified by sufficient due process, then the due process rights of the person who suffered the deprivation have been violated.[72]

¶43  In this case, it is undisputed that Mr. Kuchcinski was held in jail for seventeen days by a state actor, and that Mr. Kuchcinski was never brought before a magistrate during the seventeen days in which he was held.[73] Accordingly, on remand the district court need not determine whether a deprivation of liberty occurred—that fact is undisputed. Instead, the court must determine whether Mr. Kuchcinski's deprivation of liberty was justified by the process he was due.[74]

---

*also Flowell Elec. Ass'n, Inc. v. Rhodes Pump, LLC*, 2015 UT 87, ¶ 19, 361 P.3d 91 ("The first step in showing a violation of the Due Process Clause is to show that there has been a deprivation of life, liberty, or property.").

[71] *Jordan River Restoration Network*, 2012 UT 84, ¶ 48.

[72] *Harper v. Summit Cty.*, 2001 UT 10, ¶ 30, 26 P.3d 193 (explaining that a plaintiff could show that the defendant county had violated the plaintiff's due process rights by demonstrating "both a property interest and a deprivation of that interest by the [county] without the required legal process"). We emphasize, however, that even though the court may find that an individual's due process rights were violated, it does not necessarily mean that the state actor who effected the deprivation is subject to tort liability. For tort liability to be imposed, the plaintiff must also show that all of the elements of the *Spackman* test have been satisfied.

[73] Although a hearing was held in which the justice court made a probable cause determination and set bail, Mr. Kuchcinski was not present at that hearing. And Mr. Kuchcinski alleges that he was held in jail for twelve days before he learned, from his fiancée, that bail had been set.

[74] Many federal courts have held that "the Due Process Clause forbids an extended detention, without a first appearance, following arrest by warrant." *Hayes v. Faulkner Cty.*, 388 F.3d 669, 673 (8th Cir. 2004) (citing cases from other circuits); *see also id*. at 674 (explaining that a county's policy that "attempt[ed] to delegate the responsibility of bringing detainees to court for a first appearance . . . ignore[d] the jail's authority for long-term confinement" and was "deliberately

(Continued)

¶44 To be clear, the question is not whether the County had an obligation to provide Mr. Kuchcinski with a hearing. That question is not before us, and the answer may very well be no. This is so because the due process clause does not necessarily entitle individuals to every form of process in every instance — whether a particular form of process is due (such as notice or a hearing) depends on the nature of, and the circumstances surrounding, the deprivation. But the due process clause does guarantee individuals that they will not be deprived of liberty where the individual has not received sufficient process from the state. So in determining whether a constitutional violation occurred on remand, the district court does not necessarily have to decide whether the County had an obligation to produce Mr. Kuchcinski for an initial appearance irrespective of whether the prosecution and the court were ready and available for

---

indifferent to detainees' due process rights"); *Armstrong v. Squadrito*, 152 F.3d 564, 579 (7th Cir. 1998) ("[J]ailers hold not only the keys to the jail cell, but also the knowledge of who sits in the jail and for how long they have sat there. They are the ones directly depriving detainees of liberty."); *Oviatt*, 954 F.2d at 1476–77 (holding that a policy was deliberately indifferent where the jail had no internal procedures to track whether inmates had been arraigned); *Coleman v. Frantz*, 754 F.2d 719, 724 (7th Cir. 1985) (explaining that "[a]n extended detention before a first appearance, whether or not there has been a valid determination of probable cause, substantially impinges upon and threatens" a plaintiff's constitutional due process rights); *see also Jauch*, 874 F.3d at 430-35 (outlining the historical right to prompt initial appearance and the constitutional protections of this right). But there have been some federal courts that have held that county jailers did not violate the due process clause where they did not have express authority to release detainees. *See Moya v. Garcia*, 895 F.3d 1229, 1235 (10th Cir. 2018); *Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999). As part of the district court's determination on remand, the court may find it helpful to consider these federal cases. We also note that in the cases in which liability was found there was proof of a county policy or action that contributed to the due process violation. We further note that a policy of inaction qualifies as a "policy" for purposes of determining liability for a due process violation. *See supra* ¶ 33 ("A municipality's policy of inaction, therefore, may satisfy this element.").

such a proceeding.[75] Instead, it must decide whether, under the circumstances presented in this case, Mr. Kuchcinski's seventeen-day detention constituted a constitutional violation.[76] In making this determination, the court must determine what process, if any, Mr. Kuchcinski received—either from the County, the court, or some other state actor. Then the court must determine whether the process afforded Mr. Kuchcinski was sufficient to justify the seventeen-day detention.[77] If the process was insufficient, resulting in a constitutional violation, the district court should proceed to the next step in our common law test for municipal liability.

2. If the district court determines that Mr. Kuchcinski's due process rights were violated, it must then determine, under the *Spackman* test for liability, whether the County is liable for that violation

---

[75] In this case it is possible that the County did not have an obligation to provide Mr. Kuchcinski with a form of process because, as the district court pointed out, the County does not "control court calendars" and cannot compel a judge to hold a hearing. So if the only relevant and appropriate form of process in this case was a hearing before a magistrate, it was the judicial branch, not the County, that had the duty to provide process. But if the County was, or should have been, aware that the judicial branch failed to provide the necessary process, the County could nevertheless be found to have violated the due process clause through its continued deprivation of Mr. Kuchcinski's liberty.

[76] Some of the relevant facts to be considered are the probable cause determination, Mr. Kuchcinski's absence from the probable cause hearing, the setting of bail, Mr. Kuchcinski's allegation that he was not informed of the bail determination until he learned about it twelve days later from his fiancée, the County's failure to take Mr. Kuchcinski to the magistrate on his first Wednesday in jail, the reason for that failure, and the County's continued detention of Mr. Kuchcinski for seventeen days. It is likely that the district court will need to develop the record further to arrive at its decision.

[77] We once again reiterate that in determining whether Mr. Kuchcinski's constitutional rights were violated through state action, the court need not identify whether a particular state actor caused, or should be held responsible for, the violation—that determination should be made at the next step of the analysis as part of the *Spackman* test for liability.

¶45 If the district court determines that Mr. Kuchcinski's seventeen-day detention constituted a violation of his due process rights, it must then apply the *Spackman* test to determine whether the County, the only state actor named as a defendant in this case, should be held responsible, through the imposition of tort liability, for that violation. As we have already noted, the *Spackman* test consists of three elements: (1) that the constitutional violation the plaintiff suffered was a flagrant violation; (2) that existing remedies do not redress his or her injuries; and (3) that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries.[78]

¶46 Because Mr. Kuchcinski has identified the County, and not a specific County employee, as the alleged violator of his due process rights, he can satisfy the first, or flagrant violation, prong of this test only by proving that a deliberately indifferent County policy caused the violation.[79] In making this determination, the district court should keep in mind that *a policy of inaction*, as discussed above,[80] can qualify as a policy sufficient to establish municipal liability.[81] If the

---

[78] *Spackman*, 2000 UT 87, ¶¶ 22–25; *see also supra* ¶ 31.

[79] *See supra* ¶ 30; *see also supra* ¶¶ 32–35 (explaining that to show the existence of a flagrant violation in this case, Mr. Kuchcinski must prove (1) the existence of a municipal policy, (2) that this municipal policy evidences a deliberate indifference to his constitutional rights, and (3) that the deliberately indifferent policy (or lack of policy) caused his injury).

[80] *See supra* ¶¶ 33–34.

[81] In this case, the deliberately-indifferent nature of the violation may hinge on whether the County knew, or should have known, that Mr. Kuchcinski was being unjustifiably deprived of his liberty. *See supra* ¶ 22 (explaining that the flagrancy requirement means that the defendant "must have violated clearly established constitutional rights of which a reasonable person would have known" (citation omitted) (internal quotation marks omitted)). So if the court determines that the County violated Mr. Kuchcinski's due process rights in this case, the court must then determine whether that violation was the result of some systemic failing—stemming from a policy or lack of a policy—or whether it was an isolated incident of a type the County could not reasonably have anticipated. *See id.* (explaining that the flagrancy requirement "ensures that a government [actor] is allowed the ordinary human frailties of

(Continued)

district court finds a genuine issue of material fact as to the existence of a municipal policy, it should also determine whether an issue of fact exists as to whether such policy demonstrates deliberate indifference by the County.[82] Like other factual issues, the question of whether the County acted deliberately indifferent should be a

---

forgetfulness, distractibility, or misjudgment without rendering [him or her]self liable for a constitutional violation") (second alteration in original) (citation omitted) (internal quotation marks omitted)). In other words, if the court determines that County policies at the time were generally insufficient to prevent the type of due process violation Mr. Kuchcinski suffered, and the County knew or should have known that a violation was likely to occur, then the flagrant violation prong is satisfied.

[82] Several courts have upheld findings that a municipality has acted in a deliberately indifferent way based upon the municipality's prolonged detention of individuals without prompt pretrial procedures. For example, the Ninth Circuit has held that a municipal policy was deliberately indifferent where the jail had no internal procedures to track whether inmates had been arraigned. *Oviatt*, 954 F.2d at 1479 ("We hold that with the evidence established at trial, a reasonable jury could conclude that the likelihood of unjustified incarceration was so obvious that defendants' policy with regard to detecting prolonged incarceration without prompt pretrial procedures evidenced deliberate indifference . . . ."). The Seventh Circuit has also stated that a "policy that ignores whether the jail has the authority for long-term confinement seems to be a policy of deliberate indifference." *Armstrong*, 152 F.3d at 578–79. Similarly, the Eighth Circuit found deliberate indifference when a county's "policy was to submit the names of confinees to the court and then wait for the court to schedule a hearing." *Hayes*, 388 F.3d at 674. The court reasoned that because "the County's policy here attempts to delegate the responsibility of bringing detainees to court for a first appearance and ignores the jail's authority for long-term confinement, the policy is deliberately indifferent to detainees' due process rights." *Id.* Although we are not bound by federal caselaw or the reasoning of federal courts, the district court on remand is, of course, free to consider the reasoning in these and other related cases as part of its deliberate indifference analysis.

determination made by the jury.[83]

¶47 Finally, the district court must also make determinations regarding the final two prongs of the *Spackman* test—whether "existing remedies do not redress" Mr. Kuchcinski's injuries, and whether "equitable relief . . . was and is wholly inadequate to protect [his] rights or redress his . . . injuries."[84]

¶48 Because the district court failed to apply the correct flagrant violation standard, and failed to consider the other elements of our common law test for liability for constitutional violations, we remand this case back to the district court for the necessary determinations outlined in this opinion.

## Conclusion

¶49 Mr. Kuchcinski alleged that the County violated his rights under the bail and due process clauses of the Utah Constitution. Because he has failed to show that the bail clause is self-executing, we hold that the district court did not err in dismissing his bail clause claims. But the court did err when it determined that Mr. Kuchcinski must identify a specific municipal employee in order to successfully bring a municipal liability claim under the Utah Constitution. And the district court applied the wrong standard in granting summary judgment against him on his claim that the County flagrantly violated his constitutional rights. We therefore reverse the district court's determination and remand so that it may apply the proper standard.

---

[83] *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("Whether a [municipality] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, . . . and a factfinder may conclude that [the municipality] knew of a substantial risk from the very fact that the risk was obvious." (citations omitted)); *Oviatt*, 954 F.2d at 1478 ("Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury.").

[84] *Spackman*, 2000 UT 87, ¶¶ 24–25.

A.C.J. Lee, concurring in part and concurring in the judgment

ASSOCIATE CHIEF JUSTICE LEE, concurring in part and concurring in the judgment:

¶50  I agree with the court's analysis of the bail clause claim and thus concur in Part I of the majority opinion. I also agree with the threshold premises of the majority's disposition of the due process claim against the County: the failure to identify a specific Box Elder County official is not fatal to this claim, *supra* ¶ 30, and the County may be liable for a flagrant violation of the due process clause, *supra* ¶¶ 31–36. These are straightforward, appropriate grounds for the decision to reverse and remand to the district court. And on remand Mr. Kuchcinski should have an opportunity to develop the record and to present arguments in support of his attempt to establish the County's liability for a due process violation.

¶51 We should end the analysis there, however. The above premises adequately and effectively address the arguments presented to us on this appeal. We need not and should not proceed to provide further guidance to the parties on remand.

¶52 I disagree with and do not concur in paragraphs 37–48 of the court's opinion. In these paragraphs the majority establishes governing standards under the due process clause of the Utah Constitution. It does so without any briefing from the parties on these issues. And it establishes principles of state due process while citing only federal cases under the United States Constitution.

¶53 This is doubly problematic. We have repeatedly declined to resolve questions not addressed by the parties in their briefs.[85] And we have long emphasized that our interpretation of the Utah Constitution does not proceed in lockstep with federal precedent under parallel provisions of the United States Constitution.[86] Our

---

[85] *Winward v. State*, 2012 UT 85, ¶ 18 n.4, 293 P.3d 259 (recognizing that it would be "imprudent to now resolve [an] extremely important issue without the benefit of adversarial briefing"); *State v. Ball*, 685 P.2d 1055, 1061 (Utah 1984) (declining to consider the scope of a state constitutional provision when the issues were not briefed by the parties because they "deserve thorough treatment by counsel and careful consideration by the Court").

[86] *State v. Briggs*, 2008 UT 83, ¶ 24, 199 P.3d 935 ("[W]e do not presume that federal court interpretations of federal Constitutional provisions control the meaning of identical provisions in the Utah Constitution.").

A.C.J. Lee, concurring in part and concurring in the judgment

recent cases are particularly forceful on this point. We have underscored the importance of historical analysis focusing on the original meaning of the terms of the Utah Constitution,[87] and declined to establish new state constitutional rights in the absence of such briefing.[88]

¶54 I would follow these principles here. And I would stop short of providing the guidance presented by the court in paragraphs 37–48.[89]

———————

[87] *Neese v. Utah Bd. of Pardons & Parole*, 2017 UT 89, ¶ 67, 416 P.3d 663 (explaining that we "should look to the original meaning of the Utah Constitution" in interpreting the state due process clause); *Am. Bush v. City of S. Salt Lake*, 2006 UT 40, ¶ 66, 140 P.3d 1235 (interpreting the Utah free speech clause not in terms of our own policy arguments or modern preferences but in light of originalist inquiry; explaining that "[i]t is not our place" to "substitut[e] our own value judgment for that of the people of Utah when they drafted and ratified the constitution").

[88] *See Zimmerman v. Univ. of Utah*, 2018 UT 1, ¶ 19, 417 P.3d 78 (refusing to reach state constitutional questions because parties failed to provide any briefing on the original meaning of the constitutional provision).

[89] I do not question the general "prerogative" of the court to offer guidance for the parties on remand. *Supra* ¶ 40 n.67. But the majority has cited no precedent or other support for the provision of such guidance in a circumstance like this one—where we have no briefing from the parties, and where the only authority we cite for a state constitutional standard is precedent under the United States Constitution.