2002 UT 21

**Betty GOODNOW, Plaintiff and Appellee,**

v.

**Marie SULLIVAN, Defendant and Appellant.**

No. 990805.

Supreme Court of Utah.

Feb. 26, 2002.

L. Edward Robbins, Knab, for plaintiff.

Frank A. Allen, Barry E. Clarkson, St. George, for defendant.

HOWE, Chief Justice.

## INTRODUCTION

¶ 1 Defendant Marie Sullivan appeals from a summary judgment entered against her in this action brought by plaintiff Betty Goodnow to declare the removal of defendant as a successor trustee under the Fern Hansen Morrison Jensen Inter Vivos Trust.

## BACKGROUND

¶ 2 On November 1, 1977, the mother of plaintiff and defendant, Fern Hansen Morrison Jensen (hereinafter Mrs. Morrison) executed as settlor the Fern Hansen Morrison Jensen Inter Vivos Trust Agreement. She named herself as trustee and plaintiff and defendant as successor trustees. She reserved the right as settlor in paragraph 4.2 to "amend this trust in any manner whatsoever by delivering to the Trustee then serving a signed and acknowledged statement, such amendment not being effective until such conditions are fulfilled."

¶ 3 Mrs. Morrison died on December 4, 1998. Subsequently, plaintiff brought this action against defendant to declare that Mrs. Morrison in the months prior to her death had removed defendant as a successor trustee by virtue of a series of letters that she signed and delivered to herself as trustee. Those letters are as follows:

1. On August 6, 1998, Mrs. Morrison wrote a letter addressed "To Whom It May Concern" which read in part:

> I Fern Morrison am writing this letter to clarify my desire as to the disposition of my estate known as the Thunderbird Resort and all other properties and assets included therein. This letter is to assure that my daughter, Marie Sullivan, does not have control of my property after my death.
>
> . . . .
>
> My reward for my generosity is that Marie has been plotting for many years unbeknownst to me to have the Thunderbird properties entirely to herself upon my death. This was never my intention. I have worked all my life to have something left for my family when I die, and I never intended that Marie should have the full benefit.

The letter was subscribed by Mrs. Morrison and sworn to before a notary public.

2. On September 1, 1998, Mrs. Morrison went to her bank and in a letter instructed the bank to remove defendant as a signatory on her bank accounts.

3. On September 18, 1998, plaintiff spoke with one Neil Winterton who had been assisting Mrs. Morrison in the management of her affairs. Winterton dictated to plaintiff a letter of instructions which plaintiff typed and Mrs. Morrison then signed. The letter stated:

> Dear Mr. Winterton:
>
> Circumstances have arisen beyond my control.
>
> My desire is to change Marie M. Sullivan as Trustee to Betty Goodnow. Also change the Right of First Refusal from Marie M. Sullivan to Betty Goodnow. Please do this as soon as possible to protect our livelihood.
>
> Thanks.
>
> [Signed] Fern M. Morrison

¶ 4 Thereafter, Winterton prepared and presented to Mrs. Morrison for her signature (1) a document entitled Full Power of Attorney, giving plaintiff general power of attorney for Mrs. Morrison and superseding a

prior power of attorney in favor of defendant; (2) an amendment to the trust reversing a prior amendment that gave defendant the first right of refusal on the Thunderbird Resort and now giving that right to plaintiff; (3) a codicil to the will of Mrs. Morrison changing the personal representative from plaintiff and defendant jointly to plaintiff alone. Mrs. Morrison executed all three documents on September 22, 1998.

¶ 5 The parties filed cross-motions for summary judgment. Plaintiff's motion was supported by her affidavits that at her mother's direction, she had typed the letters previously mentioned dated August 6, 1998, September 1, 1998, and September 18, 1998, that her mother signed them in plaintiff's presence, and that it was her mother's intention in signing the letters to remove defendant as a successor trustee. No counter affidavit was filed by defendant, and none was filed in support of her motion for summary judgment.

¶ 6 At the hearing on the cross-motions, defendant objected to the admission of the letters into evidence on the grounds that they were not authentic and that they constituted hearsay. After hearing the arguments of counsel, the trial court indicated its inclination to deny both motions for summary judgment and set the case for an evidentiary trial. At that point, counsel for defendant waived his objections to the admission of the letters and requested that the court "accept" the letters and determine "do they or do they not qualify as an amendment? and that's a matter of law." In response, the trial court ruled that taken together, the letter dated August 6, 1998, addressed "To Whom It May Concern," the letter to Mrs. Morrison's bank dated September 1, 1998, and the letter of instructions to Neil Winterton dated September 18, 1998, as a matter of law amended the trust to remove defendant as a successor trustee. Consequently, the court granted plaintiff's motion and denied defendant's motion for summary judgment. Defendant appeals.

## STANDARD OF REVIEW

¶ 7 Summary judgment is granted only when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(c). In reviewing a grant of summary judgment, this court views "the facts in a light most favorable to the losing party below" and gives "no deference to the trial court's conclusions of law: those conclusions are reviewed for correctness." *Blue Cross & Blue Shield v. State of Utah,* 779 P.2d 634, 636–37 (Utah 1989).

## ANALYSIS

¶ 8 The sole issue for our determination is whether as a matter of law the letter dated August 6, 1998, was intended by Mrs. Morrison to be an amendment to her trust removing defendant as a successor trustee. *See Leggroan v. Zion's Savs. Bank & Trust Co.,* 120 Utah 93, 98, 232 P.2d 746, 749 (1951) (stating that in interpreting terms of trust, inquiry is as to intent of trustor). Because defendant waived her objections to the admission of the letters into evidence, they were properly before the trial court and now before us.

¶ 9 In support of the trial court's judgment, plaintiff argues that the August 6 letter standing alone is sufficiently clear to constitute an amendment to the trust agreement. She asserts that the language of that document is reasonably susceptible of only one meaning—that defendant not act as a successor trustee. She emphasizes that Mrs. Morrison was attempting to "assure" that defendant have no control over her property after she died. Finally, she argues that if the August 6 letter is not sufficiently clear as to Mrs. Morrison's intent, the letter to her bank and the letter to Mr. Winterton wherein she directs him to "change Marie M. Sullivan as trustee to Betty Goodnow" provide supporting evidence of her intent.

¶ 10 Notably, the August 6 document upon which plaintiff primarily relies is not denominated or entitled an amendment to the trust agreement. In fact, no specific reference is made to the trust agreement at all. Reference is made to the Thunderbird Resort property that is held in the trust. However, the document is clear that Mrs. Morrison intended that defendant not have "control of

my property after my death." The letter written to her bank to remove defendant as a signatory on her bank accounts again does not mention the trust agreement nor refer to defendant as a successor trustee. The letter dated September 18, 1998, to Mr. Winterton clearly directs him to "change Marie M. Sullivan as trustee to Betty Goodnow" and to "[c]hange the Right of First Refusal from Marie M. Sullivan to Betty Goodnow." Significantly, however, the amendment to the Fern Hansen Morrison Inter Vivos Trust signed by Mrs. Morrison on September 22, 1998, gives the right of first refusal to plaintiff but does not mention removing defendant as a successor trustee.

¶ 11 Different inferences can be drawn from these facts. The lack of specific reference to her trust agreement in the August 6 document, and the fact that the next month she requested Mr. Winterton to prepare an amendment to remove defendant as a successor trustee raises factual questions as to whether she intended the August 6 document to be an amendment to her trust. Arguably, however, she may have intended the August 6 document to be an amendment to her trust, but later decided to have it put in a more formal writing, and thus requested Mr. Winterton to have a formal amendment prepared. Additionally, as pointed out by defendant, in the August 6 letter Mrs. Morrison states that Marie has plotted to have the Thunderbird properties entirely to herself and that Mrs. Morrison "never intended that Marie should have the full benefit." Arguably, these concerns of Mrs. Morrison do not relate to whether Marie should serve as a co-trustee, but are directed to the fact that it is Mrs. Morrison's intention that her two daughters share equally in her trust estate. That, in fact, is what the trust provides.

¶ 12 In the August 6 letter, Mrs. Morrison states that she does not want defendant to "have control over my property after my death." As a successor trustee, defendant would not have full control over her mother's property. The "control" would be shared with plaintiff. The question then arises regarding what Mrs. Morrison meant by "control." Was it full control or only partial control? Again, actual questions of fact are presented.

¶ 13 Various conflicting inferences material to the outcome of the case can be drawn from the facts. The judge "may not on a motion of summary judgment, draw fact inferences as to [the moving party's] purpose or intention.... [S]uch inferences may only be drawn at trial." *See Gray Tool Co. v. Humble Oil & Ref. Co.*, 186 F.2d 365, 367 (5th Cir.1951). Accordingly, we reverse and remand this case to allow the finder of the facts, after hearing all relevant evidence, to draw those inferences which seem most reasonable.

¶ 14 Reversed and remanded.

¶ 15 Justice DURHAM concurs in Chief Justice HOWE'S opinion.

WILKINS, Justice, concurring in the result:

¶ 16 I concur in the result reached by the lead opinion. However, I do not subscribe to the reasoning of *Gray Tool Co. v. Humble Oil & Refining Co.*, 186 F.2d 365 (5th Cir. 1951), relied upon for the proposition that a judge may not, as a matter of law, draw fact inferences relating to a party's "purpose or intentions" from facts presented in support of a motion for summary judgment. That would be an unnecessarily limiting rule of law in my opinion. Moreover, such a new rule is not required to resolve the case before us.

¶ 17 Rule 56 of the Utah Rules of Civil Procedure binds trial courts in considering a motion for summary judgment. The court must consider all facts, and all inferences from those facts, in the light most favorable to the nonmoving party. It is sufficient to review this case under our ordinary standard of review, granting to defendant in this case the benefit of the most advantageous inferences to be drawn from the disputed documents and actions of the late Mrs. Morrison.

¶ 18 Where, as here, equally plausible contrary inferences may be drawn, neither party should have been granted summary judgment. Under the circumstances of this case, as presented to the trial court, the inferences drawn and relied upon by the trial court

were those most adverse to the nonmoving party, namely, that Mrs. Morrison intended to change the identity of her trustee. The inference most favorable to Ms. Sullivan would have been that Mrs. Morrison did *not* intend such a change. Summary judgment should not have been granted under these circumstances for that reason alone.

¶ 19 This matter should proceed to a stage where a trier of fact may reach supportable findings as to Mrs. Morrison's intent. I therefore concur in the result reached by the lead opinion, but not the reasoning.

¶ 20 Associate Chief Justice RUSSON and Justice DURRANT concur in Justice WILKINS' concurring in the result opinion.