**2022 UT App 51**

# THE UTAH COURT OF APPEALS

SPENCER CHRISTENSEN,
Appellant,
*v.*
SALT LAKE COUNTY, WELLCON INC., JAMES WINDER, AND
TODD WILCOX,
Appellees.

Opinion
No. 20200220-CA
Filed April 14, 2022

Third District Court, Salt Lake Department
The Honorable Laura Scott
No. 170907640

Robert B. Sykes, C. Peter Sorensen, and Christina D.
Isom, Attorneys for Appellant

Simarjit S. Gill, Jacque M. Ramos, and Timothy A.
Bodily, Attorneys for Appellees

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
DAVID N. MORTENSEN and DIANA HAGEN concurred.

POHLMAN, Judge:

¶1     Spencer Christensen's daughter, Casie Christensen, was
held in custody at the Salt Lake County Metro Jail while she was
withdrawing from opiates. After about forty-eight hours in
custody, Casie[1] died by suicide. Alleging that Casie was not
provided adequate medical care and supervision, Spencer
brought a federal claim for cruel and unusual punishment and a

---

1. Because Spencer and Casie Christensen share the same last
name, we refer to them by their first names, with no disrespect
intended by the apparent informality.

state law claim for wrongful death against Salt Lake County and others in federal district court. After the federal court granted judgment in favor of the defendants in that case, Spencer filed the current lawsuit in state court against Salt Lake County and others, bringing claims under the state constitution for unnecessary rigor and lack of due process. The state district court granted summary judgment in favor of the defendants. Spencer now appeals that decision, and we affirm.

## BACKGROUND[2]

¶2      On January 8, 2014, law enforcement arrested Casie on charges related to shoplifting. During a medical examination before being booked into the Salt Lake County Metro Jail, Casie reported that she had used heroin and cocaine that same day. After the examination, Casie was placed in a holding cell, and the jail began to monitor her for symptoms of withdrawal. Casie was also assessed for suicidal ideation, but even after she began experiencing withdrawal symptoms, Casie repeatedly denied any suicidal or self-harm thoughts. But on January 10, 2014, Casie died by suicide. We will discuss the undisputed facts surrounding these events in further detail below.

### *The Federal Lawsuit*

¶3      Casie's father, Spencer, commenced a lawsuit in federal district court against Salt Lake County, the Unified Police Department, and others. Based on his allegations that Casie was

---

2. In reviewing a grant of summary judgment, "we view the facts and all reasonable inferences in a light most favorable to the party opposing the motion." *AKB Props. LLC v. Rubberball Prods. LLC*, 2021 UT App 48, ¶ 12, 487 P.3d 465 (cleaned up); *accord Kuchcinski v. Box Elder County*, 2019 UT 21, ¶ 3 n.2, 450 P.3d 1056. We recite the facts with that standard in mind.

not provided adequate medical care and supervision, Spencer asserted a cause of action for cruel and unusual punishment under federal law and a cause of action for wrongful death under state law. It is undisputed that in the federal lawsuit, Spencer did not assert a cause of action for unnecessary rigor in violation of Article I, Section 9 of the Utah Constitution or a cause of action for a denial of due process in violation of Article I, Section 7 of the Utah Constitution.

¶4 After discovery was completed, the defendants in the federal lawsuit moved for summary judgment, arguing that the undisputed facts did not support Spencer's claims. Spencer responded by asserting that he did not intend to oppose the defendants' motion "for a host of reasons." Spencer specifically requested, however, that the federal court's order "be narrowly tailored so as not to 'dismiss all claims,' but only those claims or causes of action raised in [his federal] Complaint." Spencer explained, "For example, the Complaint did not allege a cause of action for any matters involving state civil rights violations, such as Article I, Sec. 9, or subjecting prisoners to unnecessary rigor. Such matters are still within the statute of limitations and may yet be filed in state court."

¶5 Thereafter, the federal district court granted summary judgment to the defendants. The court's order specified that Spencer's action was dismissed "with prejudice only as to the exact claims brought in the Complaint at issue and addressed in the summary-judgment motion."

*The Present Lawsuit in State Court*

¶6 Spencer then filed the present action in state court against Salt Lake County; Wellcon Inc., which contracted to provide medical services at the jail; Todd Wilcox, the responsible physician at the jail; and James Winder, the county sheriff (collectively, the County Defendants). In this lawsuit, Spencer

asserted, for the first time, claims for unnecessary rigor and denial of due process in violation of the Utah Constitution.

¶7    The County Defendants eventually moved for summary judgment on the state constitutional claims. They sought judgment "on the grounds that the undisputed material facts alleged in the complaint and the undisputed material facts as established in the Federal Action preclude [Spencer's] state constitutional violations as a matter of law." (Cleaned up.) In other words, the County Defendants argued that "applying . . . those same undisputed facts to state constitutional law precludes [the] claims asserted in the state court action." Indeed, they asserted that, as was "litigated and adjudicated" in the federal lawsuit, Casie had received appropriate medical treatment while incarcerated and that the County Defendants had employed proper protocols to assess her mental health status. The County Defendants thus contended that the "adjudicated facts the court found material and without dispute in the prior Federal Action are dispositive to [Spencer's] 'unnecessary rigor' and due process claims" and that "on those adjudicated facts, [the] state constitutional claims against the County Defendants fail as a matter of law."

¶8    In support of their motion, the County Defendants included a lengthy statement of material facts. These facts mirrored, nearly verbatim, those contained in the defendants' summary judgment motion in the federal lawsuit. Importantly, in opposing summary judgment in the present case, Spencer contested only two facts. *See infra* ¶ 32. Consequently, the district court later determined that all but those two facts were deemed admitted under rule 56(a)(4) of the Utah Rules of Civil Procedure.[3]

---

3. In opposing summary judgment, Spencer also provided a separate statement of additional material facts in dispute in

(continued…)

¶9 Still, Spencer insisted that he could bring his state constitutional claims because he never raised the claims in federal court and the federal court "said nothing about whether th[e] facts support a state civil rights claim." He also stressed that the legal standards governing his state constitutional claims differed from the standards governing the claims he had raised in federal court. He further claimed that despite his admissions, questions of fact existed as to whether Casie was subjected to unnecessary rigor and deprived of due process when, in his view, the County Defendants failed to properly assess and treat Casie for opiate withdrawal.

*The Facts*

¶10 We now set forth the detailed facts of this case that are undisputed, unless otherwise indicated.

¶11 *Wednesday.* In the late afternoon of January 8, 2014, Casie was taken into police custody, and afterward, she "acted as if she was having a seizure." She was taken to the hospital for evaluation, and while there, she reported that she had recently been raped and held against her will. After, a physician medically cleared Casie for transport to jail. When she arrived at jail, she underwent a nursing pre-screen examination—a routine procedure to obtain an overview of an inmate's health.

¶12 During this examination at 10:06 p.m., Casie reported a history of anxiety and depression for which she had been prescribed medication; she also reported that she had used

---

(…continued)
accordance with rule 56(a)(2) of the Utah Rules of Civil Procedure. The County Defendants did not contest those additional facts for purposes of their motion, asserting that the additional facts were "not relevant to nor dispositive to determining summary judgment."

heroin and cocaine earlier that day. Casie's vital signs were deemed to be in the normal range, and she appeared alert, calm, and appropriately oriented to the situation. Because of her recent drug use, Casie was placed in a holding cell in the screening area of the jail at approximately 10:35 p.m. The nursing staff also began to assess Casie for withdrawal symptoms from drugs at 11:23 p.m.

¶13 *Thursday*. Casie was assessed again at 1:17 a.m., 3:08 a.m., and 5:00 a.m. on January 9, 2014. Within this same time period, officers also checked on Casie four additional times and saw no concerning behavior. During the nursing assessments, Casie had a slightly elevated heart rate, which the parties agree is not uncommon for individuals withdrawing from drugs or alcohol, but her vital signs were otherwise within the normal range. Based on these evaluations, Casie was encouraged to drink Gatorade to stay hydrated, and she was ultimately cleared for booking into the jail around 5:00 a.m.

¶14 Under the protocol used at the jail to assess an inmate's symptoms of withdrawal, medical personnel are trained to track a variety of withdrawal symptoms, such as nausea, sweating, anxiety, headaches, and hallucinations. Each symptom is assigned a score ranging from zero to seven, and the numbers are added up as an inmate's total score, known as a CIWA score. Generally, medical intervention is initiated once an inmate's total score reaches twelve. Medical professionals at the jail are also trained to monitor inmates' vital signs for withdrawal symptoms and to evaluate whether inmates experiencing withdrawal have any suicidal or self-harm thoughts.

¶15 At 10:00 a.m., a nurse recorded Casie's CIWA score as one, with one point assessed for mild nausea with no vomiting. At this time, Casie's vital signs were within normal range, and Casie denied having suicidal or self-harm thoughts, as noted on her withdrawal worksheet.

¶16 A nurse assessed Casie for withdrawal signs again at 2:00 p.m. and recorded a score of zero on her withdrawal worksheet. Casie's vital signs were still normal, and Casie again denied any suicidal or self-harm thoughts.

¶17 Around 3:15 p.m., Casie underwent a comprehensive nursing examination. During this evaluation, her vital signs remained within the normal range. She again reported her previous cocaine and heroin use, and she complained of bruising resulting from the rape. As part of this examination, she was assessed for her current risk of suicide; she was not considered to be at risk for suicide or in need of immediate mental health treatment. But based on her reports of drug use and victimization, she was referred to be seen by a mental health professional (MHP) in her housing unit on a non-emergent basis.

¶18 At around 8:58 p.m., Casie reported to a housing officer that she was "having difficulty breathing and has asthma." Medical staff was contacted, and a nurse arrived to evaluate Casie at 9:14 p.m. The nurse assessed Casie's vital signs as "good," and Casie was cleared to stay in her normal housing unit. The nurse progress note reflects that Casie's vital signs "were not concerning for an asthma attack" and instead were "reassuring and well within the range of normal." The nurse urged Casie to rest, increase her fluids, and submit a sick call request if her symptoms worsened. Casie voiced her understanding.

¶19 *Friday*. Around 6:42 a.m. on January 10, 2014, an officer in the housing unit noticed that Casie refused to eat and exhibited withdrawal symptoms. The parties agree that refusing to eat while withdrawing from drugs or alcohol is not uncommon for inmates and was not cause for concern.

¶20 Casie had a CIWA score of three at 8:00 a.m. She was nauseated, and her score reflected that she was somewhere between "mild nausea, no vomiting" and "intermittent nausea

and dry heaves." Again, the parties agree that such symptoms are not uncommon or cause for concern during withdrawal. Casie had a slightly elevated heart rate, but her vital signs were within normal range. A Gatorade was given to Casie to help her with her withdrawal symptoms. Additionally, Casie continued to deny having any suicidal or self-harm thoughts.

¶21   Casie was assessed again around 2:00 p.m. This time, her CIWA score was five, with two (out of seven) points for nausea and three (out of seven) points assessed for anxiety, meaning that she was somewhere between "mildly anxious" and "moderately anxious or guarded." It is undisputed that neither the nausea nor the level of Casie's anxiety is uncommon for individuals withdrawing from drugs or alcohol. She was prescribed another Gatorade to ease her withdrawal symptoms. Casie's heart rate had lowered, and her other vital signs remained within normal ranges. Moreover, Casie continued to deny having suicidal or self-harm thoughts.

¶22   Around an hour later, Casie reported to a housing officer that she had been raped before coming to jail and that she had bruising, was having difficulty walking, and was "puking up blood." She also stated that she had not yet had further medical evaluation, which she had been told at the time of booking that she would later receive. The housing officer "called Mental Health" at 2:50 p.m. and notified the on-duty sergeant of Casie's complaints.

¶23   Mental Health responded within ten minutes, and an MHP evaluated and spoke with Casie for thirty minutes. Casie reported to the MHP that she had been kidnapped and raped and that she was in a lot of pain with bruising all over her body and could not "get comfortable." In response, the MHP referred Casie to be seen by a nurse again. Casie's mental health progress note states that she "denies thoughts of self-harm but does want to be seen by medical." Likewise, the MHP later testified that she saw no red flags to indicate that Casie was suicidal, and

although the MHP noted that "the risk is higher when someone is going through withdrawal" and "when someone is in jail," she testified that Casie "was adamant that she was not suicidal, but she was in pain and she wanted that addressed."

¶24   At approximately 3:52 p.m., a nurse evaluated Casie. Casie complained of withdrawal symptoms and complications from her earlier rape. Casie also complained of increased abdominal pain, nausea, and vomiting. Other than a slightly elevated heart rate, Casie's vital signs were still normal. But because of Casie's reported heroin use and continuing withdrawal symptoms, the nurse called the on-call doctor. The on-call doctor ordered some blood tests, prescribed an anti-nausea medication and Gatorade, and referred Casie to be seen at the next women's clinic to be held two days later. Casie voiced her understanding of this plan.

¶25   Two hours later, at 5:11 p.m., Casie asked to speak with Mental Health. She told the housing officer that she was "not thinking right," but when asked if she was going to hurt herself, she said no. The MHP returned and spoke with Casie.[4]

¶26   At 5:47 p.m., an officer completed a regular watch tour, which involved walking by each cell and inmate in the housing unit to ensure the safety and security of the inmates and the unit. The officer saw nothing out of the ordinary or of concern on this watch tour.

¶27   A shift change occurred at 6:00 p.m. The new on-duty officer in Casie's housing unit was briefed about the unit as a whole and about Casie specifically. The officers' shift log indicates that Casie was experiencing withdrawal symptoms,

---

4. The content of this conversation is not reflected in the undisputed facts.

had been seen by Mental Health, and was "cleared to stay in unit."

¶28 The on-duty officer conducted regular watch tours at 6:22 p.m., 7:09 p.m., 7:57 p.m., 8:42 p.m., and 9:31 p.m. The officer noted nothing out of the ordinary or of concern on any of those watch tours.

¶29 But at 10:05 p.m., during clothing exchange, a prisoner reported to officers that Casie had hanged herself in her cell. An officer responded immediately and administered CPR until nurses arrived two minutes later and took over. At approximately 10:10 p.m., jail staff called for an ambulance while resuscitation efforts continued. The ambulance arrived about six minutes later and took Casie to the hospital, where she was declared dead at approximately 10:52 p.m.

¶30 Several important details about the County Defendants' standard of care and treatment of Casie were undisputed for the purpose of summary judgment. Notably, the MHPs and nurses properly screened Casie for risk of suicide and self-harm during their encounters with her. Their care in this regard met the standard of care in correctional facilities. They also appropriately responded to Casie's requests to speak with someone about her situation and concerns. Further, they properly identified Casie as at risk for withdrawal symptoms, and they conducted repetitive screenings to assess her and respond as necessary. This was consistent with their training and met the standard of care in correctional facilities. They likewise met the standard of care in responding to Casie's complaints related to the reported rape. In short, it is undisputed that the staff at the jail "at all times monitored, assessed, and treated [Casie] utilizing their best clinical judgment and consistent with all applicable standards of care."

¶31 The parties also agreed that there was no evidence of deliberate indifference to Casie's serious medical needs. And

there was no evidence that "any custom, policy, or practice of the County [Defendants] contributed to, let alone caused, [Casie's] death."

¶32 As mentioned, *supra* ¶ 8, Spencer disputed only two facts stated in the County Defendants' motion for summary judgment. The two facts, along with Spencer's responses, are as follows:

> aa. One of the assessments for withdrawal from drugs or alcohol that is routinely used by medical personnel at the Jail and most other correctional facilities and hospitals in the United States is a "CIWA score," which stands for "Clinical Institute Withdrawal Assessment."
>
> RESPONSE: *Deny*. CIWA stands for "Clinical Institute Withdrawal Assessment," but it is used for alcohol withdrawal. . . . It is *not* appropriately used for "withdrawal from drugs."
>
> bb. The CIWA score is an internationally validated assessment tool that has been in use for many years and is the gold standard for assessing patients experiencing signs and symptoms of withdrawal.
>
> RESPONSE: *Deny*. The CIWA test is not appropriate for assessing withdrawal from opiate drugs. This was admitted by Dr. Wilcox in 2013, at least six months before Casie died.

(Cleaned up.) In other words, Spencer asserts that the CIWA protocol, which the County Defendants used in evaluating Casie, is appropriate only for assessing alcohol withdrawal but is not appropriate for assessing opiate withdrawal, the type of withdrawal that Casie was experiencing.

*The District Court's Ruling*

¶33    After briefing and oral argument, the district court granted summary judgment in favor of the County Defendants. The court first noted that Spencer had admitted all but the two disputed facts. *See supra* ¶¶ 8, 32. After laying out those two disputed facts, the court determined that "even if the Court assumes for purposes of the motion . . . [Spencer's] position that there is a better or more accurate protocol that should have been used by [the County] Defendants to assess [Casie] during her incarceration, based on the remaining undisputed facts this Court cannot possibly conclude [the County] Defendants were deliberately indifferent or otherwise violated [Casie's] constitutional rights to be free from 'unnecessary rigor' or due process under the Utah Constitution." The court thus concluded that Spencer's "inadequate medical care claims against [the County] Defendants fail as a matter of law."

¶34    Accordingly, the district court granted the County Defendants' motion for summary judgment and dismissed Spencer's claims with prejudice. Spencer appeals.

ISSUE AND STANDARD OF REVIEW

¶35    Spencer contends that the district court erred in granting summary judgment to the County Defendants on his state constitutional claims. Summary judgment is appropriately granted "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). "We review the trial court's conclusions of law for correctness," and "in doing so, we view the facts and all reasonable inferences in a light most favorable to the party opposing the motion." *AKB Props. LLC v. Rubberball Prods. LLC*, 2021 UT App 48, ¶ 12, 487 P.3d 465 (cleaned up).

ANALYSIS

¶36    Spencer challenges the district court's decision granting summary judgment to the County Defendants. We begin by addressing whether material facts are in dispute. We then address Spencer's arguments on appeal.

I. The Undisputed Facts

¶37    As an initial matter, we discuss whether Spencer is bound by certain facts. The district court recognized that, except for two facts, Spencer did not oppose the County Defendants' statement of material facts in their motion for summary judgment in state court. Accordingly, the court deemed those facts admitted under rule 56(a)(4) of the Utah Rules of Civil Procedure. Spencer does not challenge the court's determination on this point, and we therefore proceed with our analysis of those undisputed facts.[5] *Supra* ¶¶ 11–31. Further, as we explain, *infra* ¶ 56, the two disputed facts do not compel a different outcome here.

¶38    Spencer emphasizes that "[n]either unnecessary rigor [under the Utah Constitution] nor state due process were raised" in the federal action. This is true. The federal district court dismissed Spencer's federal claim for cruel and unusual punishment and his state claim for wrongful death. Spencer's state constitutional claims in the present action were not before the federal court. On appeal, Spencer emphasizes that the state constitutional claims are substantively different from his earlier claims in federal court, and he asserts that the established facts "give rise to state constitutional violations under state law" and

---

5. Spencer is bound by these undisputed facts for the additional reason that he has conceded that he cannot relitigate the facts established by virtue of the federal action, which in all material respects are identical to the statement of material facts in the state action.

that the state district court erred in concluding otherwise. (Cleaned up.) Thus, our task is to determine whether Spencer has cognizable state constitutional claims in light of his admissions. *Cf. Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 49, 250 P.3d 465 ("Because the state and federal standards for determining whether a plaintiff is entitled to damages for a constitutional violation are different, a federal court determination that the material undisputed facts do not give rise to a federal constitutional violation does not preclude a state court from deciding whether those same facts will give rise to a state constitutional violation."). We now turn to that task.

## II. The State Constitutional Claims

¶39 Spencer contends that the district court erred in concluding that his state constitutional claim for unnecessary rigor failed as a matter of law. Spencer explains that this claim "deal[s] with the application of an alcohol withdrawal protocol to Casie" rather than an opiate withdrawal protocol. He asserts that the County Defendants failed to properly evaluate Casie for heroin withdrawal and unnecessarily exposed her to a risk of death by suicide, thereby subjecting her to unnecessary rigor in violation of Article I, Section 9 of the Utah Constitution. Spencer further argues that the district court "failed to appreciate that the same facts that might justify dismissal of a deliberate indifference claim in federal court do not preclude an unnecessary rigor claim in state court." In his view, all he had to prove was "unnecessary abuse or unnecessary exposure to an increased risk of serious harm to establish unnecessary rigor." (Cleaned up.) He also asserts that contested issues of fact precluded summary judgment in this regard. The County Defendants respond that the established facts show "all care and treatment [of Casie] was appropriate" and "within the standard of care" and that Spencer thus cannot show unnecessary rigor.

¶40 We conclude that the district court correctly determined that Spencer's unnecessary rigor claim fails as a matter of law.[6] We first set forth the law involved when a party asserts a violation of the unnecessary rigor clause, and we then address its application to this case.

A

¶41 To recover monetary damages for a violation of the Utah Constitution, a plaintiff must establish (1) a violation of his or her constitutional rights, (2) that the constitutional provision the defendant violated was "self-executing," and (3) that the *Spackman* test for tort liability, which requires a showing that the violation was flagrant, is satisfied. *See Kuchcinski v. Box Elder County*, 2019 UT 21, ¶ 37, 450 P.3d 1056; *see also Spackman ex rel. Spackman v. Board of Educ. of Box Elder County School Dist.*, 2000 UT 87, ¶¶ 22–25, 16 P.3d 553 (explaining that under the *Spackman* test, a plaintiff must establish "a 'flagrant' violation of his or her constitutional rights," "that existing remedies do not redress his or her injuries," and that equitable relief "is wholly inadequate to protect the plaintiff's rights"). This framework applies to lawsuits against municipalities and their employees. *See Kuchcinski*, 2019 UT 21, ¶¶ 16, 24–25. Our analysis

---

6. In addition to his unnecessary rigor claim, Spencer raised a due process claim under the Utah Constitution, arguing that Casie was denied due process. *See* Utah Const. art. I, § 7 ("No person shall be deprived of life, liberty or property, without due process of law."). But on appeal Spencer focuses most of his attention on the unnecessary rigor claim, and he recognized at oral argument that his two state constitutional claims involve the "same law" and thus rise and fall together. Because we conclude that his unnecessary rigor claim fails as a matter of law, we likewise conclude that his due process claim fails as a matter of law.

concentrates primarily on the first element: whether Spencer has shown a violation of Casie's constitutional rights.[7]

¶42   Article I, Section 9 of the Utah Constitution provides, "Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted. Persons arrested or imprisoned shall not be treated with unnecessary rigor." The first sentence of this section "closely approximates the language of the Eighth Amendment to the United States Constitution," *Dexter v. Bosko*, 2008 UT 29, ¶ 7, 184 P.3d 592, and it is "directed to the sentence imposed" on a criminal defendant, *see id.* ¶ 17.

¶43   The second sentence of Article I, Section 9—the unnecessary rigor clause—is at issue here. It "has no federal counterpart,"[8] *id.* ¶ 7, and its role is to "protect[] persons arrested or imprisoned from the imposition of circumstances on them during their confinement that demand more of the

---

7. The second element is satisfied in this case. "A constitutional provision is self-executing if it articulates a rule sufficient to give effect to the underlying rights and duties intended by the framers of the constitution" or, "in other words, . . . if no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed." *Kuchcinski v. Box Elder County*, 2019 UT 21, ¶ 17, 450 P.3d 1056 (cleaned up). The Utah Supreme Court has determined that the unnecessary rigor clause contained in Article I, Section 9 of the Utah Constitution "is a self-executing provision." *Bott v. DeLand*, 922 P.2d 732, 737 (Utah 1996), *abrogated on other grounds by Spackman ex rel. Spackman v. Board of Educ. of Box Elder County School Dist.*, 2000 UT 87, 16 P.3d 533; *accord Dexter v. Bosko*, 2008 UT 29, ¶ 21, 184 P.3d 592.

8. In fact, "[n]early identical provisions . . . exist in only four other state constitutions." *Dexter*, 2008 UT 29, ¶ 7 & n.8.

prisoner than society is entitled to require," *id.* ¶ 17. It thus centers on "the circumstances and nature of the process and conditions of confinement." *Id.*

¶44 The Utah Supreme Court has explained that the unnecessary rigor clause protects prisoners and arrestees against "unnecessary abuse." *Bott v. DeLand*, 922 P.2d 732, 737 (Utah 1996), *abrogated on other grounds by Spackman*, 2000 UT 87. Abuse "focuses on needlessly harsh, degrading, or dehumanizing treatment of prisoners." *Id.* at 740 (cleaned up). "[U]nnecessary rigor must be treatment that is clearly excessive or deficient and unjustified, not merely the frustrations, inconveniences, and irritations that are common to prison life." *Id.* at 741. In other words, "[a] prisoner suffers from unnecessary rigor when subject to unreasonably harsh, strict, or severe treatment," which "may include being unnecessarily exposed to an increased risk of serious harm." *Dexter*, 2008 UT 29, ¶ 19. Accordingly, "[w]hen the claim of unnecessary rigor arises from an injury, a constitutional violation is made out only when the act complained of presented a substantial risk of serious injury for which there was no reasonable justification at the time." *Id.* This standard is "difficult . . . to prove." *See Bott*, 922 P.2d at 744. Further, to be a flagrant violation in satisfaction of the *Spackman* test, "the conduct at issue [must] be more than negligent to be actionable." *Dexter*, 2008 UT 29, ¶ 21.

B

¶45 Here, Spencer asserts that his claim is *not* about "inadequate or negligent care" or "deliberate indifference." He acknowledges that he must prove unnecessary abuse or unnecessary exposure to an increased risk of serious harm to establish the unnecessary rigor claim. And Spencer's theory is that the County Defendants' "failure to assess and treat Casie with an opiate withdrawal standard (a) subjected her to unreasonably harsh, strict or severe treatment in her confinement; [and] (b) unnecessarily exposed her to an increased

risk of serious harm, i.e., death by suicide." (Cleaned up) (citing *Dexter*, 2008 UT 29, ¶ 19).

¶46 The district court concluded that even assuming "there is a better or more accurate protocol" that the County Defendants should have used to assess Casie during her incarceration, "based on the remaining undisputed facts [the court] cannot possibly conclude [the County] Defendants were deliberately indifferent or otherwise violated [Casie's] constitutional right[] to be free from 'unnecessary rigor'" under the Utah Constitution. The court then concluded that "the inadequate medical care claims . . . fail as a matter of law."

¶47 Spencer points to the district court's use of the phrase "deliberately indifferent" and asserts that the court thereby mistakenly treated his claim as one for deliberate indifference under Article I, Section 9. But we are not persuaded that this reference demonstrates that the court treated his claim as limited to a deliberate indifference theory. We read the court's statement, in context, as evidencing its understanding of the difference between deliberate indifference and unnecessary abuse, especially because the parties had addressed both in their briefing.[9] *See generally Bott*, 922 P.2d at 740–41 ("The deliberate indifference standard protects prisoners from cruel and unusual punishments, and the unnecessary abuse standard protects prisoners from unnecessary rigor.").

---

9. To the extent that Spencer suggests that perhaps the district court applied the deliberate indifference standard applicable to federal claims for cruel and unusual punishment under the Eighth Amendment, we disagree. The court's decision demonstrates it understood that Spencer's unsuccessful deliberate indifference claim under the Eighth Amendment in federal court did not necessarily foreclose an unnecessary rigor claim under Article 1, Section 9 of the Utah Constitution in state court.

¶48    Spencer further asserts that the district court "failed to appreciate that unnecessary rigor easily can arise out of the same facts that may fail to establish a federal claim for deliberate indifference under the Eighth Amendment" to the United States Constitution. (Cleaned up.) *See generally Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) ("A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976))); *Bott*, 922 P.2d at 738 (noting that a prisoner may recover for "inadequate medical care only upon a showing of 'deliberate indifference,' as defined by the United States Supreme Court"). Again, we are not persuaded. The court's memorandum and earlier orders show that it understood that Spencer's unnecessary rigor claim in this case arose solely under the Utah Constitution.

¶49    That leaves Spencer with his main argument on appeal— that the district court erred in concluding that his state constitutional claim for unnecessary rigor failed as a matter of law. As he explains, "just because the 'facts' show some care for Casie (e.g., alcohol withdrawal) does not mean that a state claim for unnecessary rigor is precluded under those same facts." And he asserts that the County Defendants violated the unnecessary rigor clause when they "unnecessarily exposed Casie to an increased risk of serious harm by suicide when they screened and treated her as an alcoholic instead of as a withdrawing heroin addict."

¶50    The problem for Spencer is that even if the unnecessary rigor clause provides more protections than the Eighth Amendment,[10] Spencer's state constitutional claim is not viable

---

10. Some federal courts appear to equate the state and federal standards. *See Brown v. Larsen*, 653 F. App'x 577, 579 (10th Cir. 2016) ("The inquiry under the Eighth Amendment—whether the conditions objectively posed a substantial risk of serious harm—

(continued…)

considering his concessions. Specifically, it is undisputed that the staff at the jail "at all times monitored, assessed, and treated [Casie] utilizing their best clinical judgment and consistent with all applicable standards of care." It is also undisputed that the MHPs and nurses properly screened Casie for risk of suicide and self-harm and met the standard of care in this regard. They also appropriately responded to Casie's requests to speak with someone about her concerns, and they properly identified Casie as at risk for withdrawal symptoms, conducting repetitive screenings to assess her. This care was consistent with their training and met the standard of care in correctional facilities. Additionally, it is undisputed that no evidence showed that "any custom, policy, or practice of the County [Defendants] contributed to, let alone caused, [Casie's] death."

¶51 Spencer cannot sustain his unnecessary rigor claim in the face of these admissions. Because Spencer has conceded, among other things, that the County Defendants "at all times monitored, assessed, and treated" Casie for the risk of suicide and other conditions, we do not see how Spencer could prove that the County Defendants subjected Casie to "treatment that is clearly excessive or deficient and unjustified," *see Bott*, 922 P.2d at 741, or to treatment that is "unreasonably harsh, strict, or severe," *see Dexter*, 2008 UT 29, ¶ 19. For example, the County Defendants began monitoring Casie for withdrawal symptoms

---

(…continued)

is the same as the inquiry under the unnecessary rigor clause— whether the injurious act presented a substantial risk of serious injury." (cleaned up)); *Redmond v. Crowther*, No. 2:13CV393DAK, 2016 WL 3546292, at *7 (D. Utah June 23, 2016) (stating that "the protections of the Unnecessary Rigor Clause [are defined] in an identical way in medical treatment cases as the federal courts have defined protections of the Eighth Amendment"). Yet, for purposes of this appeal, we need not decide the exact contours of the relationship between the state and federal standards.

when she arrived at the jail, and the MHP responded to speak with Casie after Casie told a housing officer around 5:00 p.m. on January 10 (shortly before her death) that she was "not thinking right" but was not going to hurt herself. This treatment is not clearly deficient, and Spencer has not explained how he could still state a claim for unnecessary rigor given he admitted that the County Defendants used their best professional judgment and satisfied the applicable standard of care.

¶52   Under Utah law, "a constitutional violation [under the unnecessary rigor clause] is made out only when the act complained of presented a substantial risk of serious injury for which there was no reasonable justification at the time." *Id.* According to Spencer, Casie was unnecessarily exposed to "an increased risk of serious harm by suicide when [the County Defendants] screened and treated her as an alcoholic instead of as a withdrawing heroin addict." But it is undisputed that under the protocol that the County Defendants did employ, they *were* monitoring Casie for suicide and withdrawal symptoms. In fact, they were watching and assessing Casie for risk of suicide, and she repeatedly denied having any thoughts of self-harm.

¶53   Although the County Defendants sadly were unable to prevent Casie's death from happening, their monitoring for suicide did not "expose[] [Casie] to an increased risk of harm" or "present[] a substantial risk" given the undisputed fact that those efforts were consistent with the appropriate standard of care. *See id.* Put differently, it is incompatible for Spencer to recognize that the County Defendants met the standard of care but also maintain that they simultaneously exposed Casie to a substantial risk of harm.

¶54   Our supreme court has also explained that to be a flagrant violation of the unnecessary rigor clause, "the conduct at issue [must] be more than negligent to be actionable." *Id.* ¶ 21. Thus, the defendants' conduct must be more culpable than mere negligence. *See id.* But Spencer asserts that he "is not arguing

inadequate or negligent care," and by admitting that the County Defendants complied with the standard of care, he has effectively conceded that the County Defendants' conduct was not even negligent. *Cf. Cope v. Utah Valley State College*, 2014 UT 53, ¶ 11, 342 P.3d 243 (explaining that negligence typically requires a breach of the applicable standard of care); *Nguyen v. IHC Health Services, Inc.*, 2010 UT App 85, ¶ 15, 232 P.3d 529 (stating that a party claiming negligence must "prove that the standard of care had been breached"). It follows that their conduct was not "more than negligent" and is not "actionable" under the unnecessary rigor clause. *See Dexter*, 2008 UT 29, ¶ 21; *see also Richards v. State*, 2003 UT App 68U, para. 6 (concluding that the plaintiff's factual allegations "amount to a textbook example of simple employer negligence" and because "negligence is insufficient to constitute a violation" of Article I, Section 9, the trial court correctly dismissed the claim).

¶55 Spencer also has not explained how he could prevail when he has admitted that the County Defendants had no policy or practice that contributed to, let alone caused, Casie's death. Where Spencer's theory is predicated on the County Defendants' use of an alcohol withdrawal protocol for Casie (who was withdrawing from opiates), Spencer would have to show that Casie's "injury was *caused* by" the County Defendants' allegedly flawed protocol. *See Bott*, 922 P.2d at 739–40 (emphasis added); *see also id.* (holding that a prisoner could recover damages under Article I, Section 9 if the prisoner "shows that his injury was caused by a prison employee who acted with deliberate indifference or inflicted unnecessary abuse upon him"). Because Spencer has conceded that there is no such causation, Spencer cannot prove an unnecessary rigor violation. *See id.*

¶56 Our view is unchanged even taking into consideration the two facts that Spencer disputed. In particular, Spencer asserts that the CIWA protocol used by the County Defendants is appropriate only for alcohol withdrawal, not withdrawal from opiates. *Supra* ¶ 32. But like the district court, we conclude that

even assuming that "there is a better or more accurate protocol that should have been used by [the County] Defendants to assess [Casie] during her incarceration," Spencer's unnecessary rigor claim is still unavailing as a matter of law based on the remaining undisputed facts.

¶57    Finally, Spencer claims that factual disputes preclude summary judgment, arguing that "[a]t a bare minimum, there are substantial questions of fact about unnecessary rigor in this case." But, again, Spencer cannot overcome his admissions. As discussed, Spencer cannot maintain this unnecessary rigor claim when he has effectively conceded, among other things, that he cannot show causation, a breach of the standard of care, or conduct that is more than negligent. For these reasons, the district court correctly granted summary judgment in favor of the County Defendants.

CONCLUSION

¶58    We conclude that given Spencer's admissions, his state constitutional claims fail as a matter of law. Accordingly, we affirm the district court's grant of summary judgment to the County Defendants.

——————